USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES,

Plaintiff,

- against -

JAMIL BANKS,

Defendant.

**21 CR 93 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Defendant Jamil Banks ("Banks") is charged in a multi-defendant indictment with racketeering conspiracy, continuing criminal enterprise, and using a firearm in connection with committing a drug trafficking crime. (See Dkt. No. 275 (Ninth Superseding Indictment filed March 11, 2025) (the "Indictment").) Banks has filed Omnibus Pre-Trial Motions requesting this Court: (i) dismiss the Indictment against him, on the grounds that the Government breached Banks's plea agreement in a prior case;[1] (ii) conduct an *in camera* review of the grand jury minutes to ensure the Government did not breach the prior plea agreement; (iii) order the Government

[1] United States v. Jamil Banks, No. 20-CR-284 (the "Prior Case").

to file a bill of particulars so he may interpose a plea of double jeopardy; and (iv) dismiss the continuing criminal enterprise charge for failure to state an offense. (See Dkt. Nos. 597 (Motions), 598 (Affirmation in Support of Motion), 599 (Memorandum in Support of Motion ("Mem.")) (collectively, the "Motions").)

For the reasons that follow, Banks's Motions are **DENIED.**[2]

## I. BACKGROUND

This Court assumes the parties' familiarity with the lengthy procedural posture and facts of this case and recites the facts only as necessary to decide Banks's Motions.

### A. The Prior Case

Much of Banks's Motions is premised on the facts of his conviction in the Prior Case so the Court provides an overview of those facts here.

On June 3, 2020, a grand jury sitting in this District charged Banks with (1) being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1); (2) possessing controlled substances with intent to distribute, 21 U.S.C. §§ 812 and

[2] The Parties have requested oral argument on Banks's Motions. (See, e.g., Dkt No. 774.) The Court finds oral argument is unnecessary to resolve Banks's Motions and will decide the Motions on the papers.

841; (3) possessing a firearm in furtherance of a narcotics offense, 18 U.S.C. § 924(c) ("Section 924(c)") (collectively, the "Prior Conduct"). (See Indictment, United States v. Jamil Banks, No. 20-CR-284 (S.D.N.Y. June 3, 2020), Dkt. No. 6.)

Banks and the Government entered into the Plea Agreement on March 15, 2022, in which Banks agreed to plead guilty to narcotics conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (See Plea Agreement at 1.) As is relevant here, the Plea Agreement contained a clause in which the Government made certain promises to Banks not to prosecute him in the future for that offense. (See id. at 1-2.) That clause reads, in pertinent part:

> In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for, from January 2019 through April 2020, participating in a conspiracy to distribute and possess with the intent to distribute fentanyl and heroin, as charged in Count One of the Information, it being understood that *this agreement does not bar the use of such conduct as a predicate act* or as the basis for a sentencing enhancement *in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant.

(Plea Agreement at 1-2 (emphasis added).)

The Plea Agreement also includes an integration clause, which reads, in pertinent part:

> [T]his Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

(Id. at 6-7.)

On March 18, 2022, the Government filed a superseding information, (see Superseding Information, United States v. Jamil Banks, No. 20-CR-284 (S.D.N.Y. Mar. 18, 2022), Dkt. No. 37), which charged Banks with one count of narcotics conspiracy, which occurred from January 2019 through on or about April 2020, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (See id. at 1-2.)

That same day, Banks pled guilty to Count One of the Superseding Information before the Honorable Sidney H. Stein. (See Plea Transcript, United States v. Jamil Banks, No. 20-CR-284 (S.D.N.Y. Mar. 18, 2022), Dkt. No. 41.) Banks acknowledged he pled guilty pursuant to the Plea Agreement, which "constituted [his] complete and total understanding of the entire agreement between the [G]overnment, [his] attorneys, and [him]self" and that there were no "side deals."

(Id. at 17:10-22.)[3] The Government proffered that, if the Government proceeded to trial, it would present, among other things, evidence obtained through arrests of Banks and "multiple other individuals along the same street in the Bronx, specifically, Valentine Avenue[.]" (Id. at 24.)

Sentencing was held before the Honorable Sidney H. Stein on August 2, 2022. (See Sentencing Transcript, United States v. Jamil Banks, No. 20-CR-284 (S.D.N.Y. Aug. 2, 2022), Dkt. No. 55.) Judge Stein sentenced Banks to 120 months imprisonment on Count One of the Superseding Information and dismissed the remaining counts in the underlying indictment, including the charge relating to his possession of a firearm. (See id. at 15:4-19:1.)[4] Banks is now serving his sentence, having been incarcerated since his arrest on April 10, 2020.

B. The Current Case

On March 11, 2025, the Government charged Banks and twenty-six others in the Ninth Superseding Indictment in this

---

[3] Banks also pled guilty to two specifications of an amended violation petition, which alleged he violated the terms of his supervised release in a different case. (See id. at 20-22.)

[4] Judge Stein also sentenced Banks to forty-six months incarceration on each of the two specifications in the violation of supervised release, to run concurrently with one another, but with twenty-four of those months to run consecutively to Banks's 120-month sentence for Count One of the Superseding Information. (See id. at 22:14-19.)

case. (See Indictment.) Banks stands charged with Racketeering Conspiracy ("RICO"), in violation of 18 U.S.C. § 1962(d) ("Count One" or the "RICO Conspiracy Charge"); Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848 ("Count Eleven" or the "CCE Charge"); and Use of Firearm in connection with a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2 ("Count Twenty-Two" or the "Firearms Charge"). (See id.)

Count One alleges that Banks and his co-defendants were members of the "Valentine Avenue Crew," which operated from on or about 1993 through on or about February 2025 "principally in the Bronx, New York and particularly in the vicinity of the block of Valentine Avenue between East 194th Street and East 196th Street." (Id. at 3, 6.) Count One alleges that the Valentine Avenue Crew conducted a pattern of racketeering activity consisting of numerous predicate acts, including, among other things, "multiple offenses involving the distribution of controlled substances, including fentanyl, heroin, cocaine, and cocaine base, in a form commonly referred to as 'crack,' in violation of laws of the United States, to wit, Title 21, United States Code, Sections

812, 841(a)(l), 841(b)(l)(A), and 846, and Title 18, United States Code, Section 2." (Id. at 6-7.)

Count Eleven charges Banks and numerous of his co-defendants with engaging in a CCE. (See id. at 21.) Count Eleven alleges, in substantial part, as follows:

> From at least in or about 1993 through at least in or about February 2025, in the Southern District of New York and elsewhere . . . each of the defendants knowingly and intentionally participated in a continuing series of violations of Title 21, United States Code, Chapter 13, Subchapter I, to wit, a continuing series of regular and typically daily violations of Title 21, United States Code, Sections 841(a)(l) and 841(b)(l)(C), which were undertaken by each of the defendants in concert with five and more persons with respect to whom each of the defendants occupied a position of organizer, a supervisory position, and any other position of management, and from which each of the defendants obtained substantial income and resources.

(Id. at 20-21.)

Finally, Count Twenty-Two charges that Banks and numerous of his co-defendants, from "at least in or about 1993 up to and including in or about February 2025," knowingly used and carried one of more firearms during and in relation to the Narcotics Conspiracy charged in Count Ten of the Indictment ("Count Ten"). (Id. at 26-27.) Banks is not charged in Count Ten, which charges several of his co-defendants with

Narcotics Conspiracy in violation of 21 U.S.C. § 846. (See id. at 18-20.)

## II. DISCUSSION

Banks now brings Omnibus Pre-Trial Motions, requesting this Court to: (i) dismiss all counts against him in the Indictment for breach of the Plea Agreement in the Prior Case; (ii) review the grand jury minutes in this case *in camera* to ensure that the grand jury was presented evidence relating only to Banks's alleged criminal conduct post-dating the Plea Agreement in the Prior Case; (iii) order the Government to provide a bill of particulars to supplement his Motion or interpose a plea of double jeopardy; and (iv) dismiss the CCE charge against him for failure to state an offense. (See Mem.)

The Government filed an opposition (see Dkt. No. 619 ("Opp.")), which appends the prior plea agreement as an exhibit (see Dkt. No. 619-1 (Plea Agreement Dated March 15, 2022) (the "Plea Agreement")). Banks filed a reply in support of his Motions. (See Dkt. No. 659 ("Reply").) The Court subsequently requested additional information regarding whether the Government had provided Banks with a bill of particulars and, if so, why, as Banks alleges, that bill of particulars was insufficient to defend against the charges or

interpose a plea of double jeopardy. (See Dkt. No. 753.) The parties submitted a joint letter setting forth their respective positions on October 5, 2026, attaching the bill of particulars as an exhibit. (See Dkt. Nos. 774 ("Ltr."); 774-1 ("Bill of Particulars").)

The Court notes at the outset that while Banks makes some references to double jeopardy "concerns" in support of his Motions, (see, e.g., Mem. at 7, 9-10) he has not moved to dismiss any of the charges against him on double jeopardy grounds, nor has he fully explained how the new charges raise double jeopardy concerns. (See Mem. at 7 n.8 ("Mr. Banks reserves his right to bring a Double Jeopardy motion").) Absent full briefing on any double jeopardy issues, the Court cannot make an informed ruling on those issues. Accordingly, the Court "will not consider" the double jeopardy "arguments not raised by" Banks, except to the extent he directly raises them in his Motions. Pace v. Air & Liquid Sys. Corp., 171 F. Supp. 3d 254, 271 n.18 (S.D.N.Y. 2016).

Further, the Court notes that Banks has raised several arguments for the first time on Reply, as discussed below. "[A]rguments first raised in reply briefs are forfeited or waived." Chevron Corp. v. Donzinger, 325 F. Supp. 3d 371, 379

n. 21 (S.D.N.Y. 2018) (collecting cases). Regardless, and as the Court will explain, even if the Court considered those arguments, they would fail on the merits.

A. Motion to Dismiss for Breach of the Plea Agreement

Banks first moves to dismiss all charges against him, alleging that the Government breached the Plea Agreement by prosecuting him in this case for the conduct governed by the Plea Agreement in the Prior Case. (See Mem. at 3-8.) The Government responds by arguing that the plain language of the Plea Agreement allows for the current charges. (See Opp. at 4-7.) The Court agrees with the Government and denies Banks's Motion.

1. Law Governing Breach of Plea Agreements

To determine whether there has been a breach of a plea agreement, the Court reviews the "plea agreement in accordance with principles of contract law and look[s] to what the parties reasonably understood to be the terms of the agreement to determine whether a breach has occurred." United States v. Rivera, 115 F.4th 141, 146 (2d Cir. 2024) (citation and quotation marks omitted), cert. denied, 145 S. Ct. 1455 (2025). Given that "the government enjoys disproportionate bargaining power in plea agreement negotiations," id., plea

agreements "are significantly different from commercial contracts." United States v. Feldman, 939 F.3d 182, 189 (2d Cir. 2019).

Accordingly, the Court "construe[s] plea agreements strictly against the government and do[es] not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." United States v. Wilson, 920 F.3d 155, 162 (2d Cir. 2019) (quotation marks omitted). The Court looks "to the 'precise terms' of the plea agreement to discern 'what the reasonable understanding and expectations of the defendant were as to the sentence for which he had bargained.'" Rivera, 115 F.4th at 147 (2d Cir. 2024) (quoting Wilson, 920 F.3d at 163). Any "ambiguities should be resolved in favor of the defendant." Innes v. Dalsheim, 864 F.2d 974, 979 (2d Cir. 1988).

2. Banks's Motions

Banks's argument turns principally on the meaning of the Plea Agreement's carve-out clause, which states that:

> "the defendant will not be further prosecuted criminally by [the United States Attorney's Office for the Southern District of New York] . . . for, from January 2019 through April 2020, participating in a conspiracy to distribute and possess with the intent to distribute fentanyl and heroin, as charged in Count One of the Information, it being understood that *this agreement does not bar the use*

> *of such conduct as a predicate act* or as the basis for a sentencing enhancement *in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq.*"

(Plea Agreement at 1-2 (emphasis added).)

According to Banks, the RICO Conspiracy and CCE Charges against him do not require predicate acts as elements of the offenses, so the carveout provision does not apply. (See Mem. at 5-7.) As to the Firearms Charge, Banks claims the current prosecution "violate[s] the language and spirit of the Plea Agreement" because he "surrendered his right to trial in his prior case in reliance on the Government's agreement to dismiss" the firearms offense in the Prior Case. (Id. at 8.)[5]

The Government concedes that the conduct to which Banks pled guilty in the Prior Case, which it refers to as the "immunized conduct," "forms part, not all, but part of the underlying conduct to be proven" as predicates for the RICO and CCE Charges. (Opp. at 5.) With respect to the Firearms

[5] Banks also argues, for the first time on Reply and in a sole footnote, that the "Court should Order the government to provide undersigned counsel with all email communications between the government and prior counsel for Mr. Banks in case 20-Cr-00284." (Reply at 2 n.2.) "[A]rguments [that] appear only in footnotes . . . are not properly raised, and the Court is under no obligation to consider them." Weslowski v. Zugibe, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015) (collecting cases), aff'd, 626 F. App'x 20 (2d Cir. 2015). Banks failed to properly raise that argument, so the Court declines to consider it.

Charge, the Government concedes that it intends to use the evidence from the Prior Case to prove that charge but argues that doing so does not violate the plain language of the Plea Agreement. (See id. at 6-7.)

3. The RICO Conspiracy Charge

Banks first argues that the Plea Agreement bars prosecution for the RICO Conspiracy charge because a conviction for 18 U.S.C. § 1962(d) does not require the Government to prove the defendant agreed to commit, or committed in fact, a predicate act. (See Mem. at 6.) While Banks is correct about those propositions, see, e.g., United States v. Capers, 20 F.4th 105, 117-18 (2d Cir. 2021), his Motion fails because a conviction for RICO conspiracy requires the Government to prove that at least two "predicate acts were, or were intended to be, committed as part of the conspiracy." United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018) (cleaned up).

A "RICO conspiracy requires proof that the defendant "agreed to conduct or to participate in the conduct of an enterprise's affairs through a pattern of racketeering activity." Id. (cleaned up). And "[t]o prove the pattern [of racketeering] element, the government must show that two or

more 'predicate acts were, or were intended to be, committed as part of [the] conspiracy.'" Id. (quoting United States v. Cain, 671 F.3d 271, 291 (2d Cir. 2012)). Further, the defendant himself need not intend to or in fact commit any of the predicate acts; instead, the Government is required to prove only "that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering." United States v. Hicks, 5 F.4th 270, 275 (2d Cir. 2021) (quoting Zemlyansky, 908 F.3d at 11) (cleaned up).

Here, the Plea Agreement's carveout provision expressly allowed the Government to use the conduct underlying the drug conspiracy to which Banks pled guilty in the Prior Case as a "predicate act . . . in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq." (Plea Agreement at 1-2.) The Government intends to do just that in this case, namely, use the conduct underlying the drug conspiracy to which Banks pled guilty in the Prior Case to show "that the scheme" in this case "involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering." Hicks, 5 F.4th at 275.

The "precise terms of the plea agreement," therefore, demonstrate that Banks would have had a "reasonable understanding and expectation[]," at the time he signed the Plea Agreement that the Government could use the conduct underlying his guilty plea as a predicate act in a subsequent RICO prosecution. Rivera, 115 F.4th at 147 (internal citation and quotation marks omitted). The Government has not breached the Plea Agreement by using that conduct as a predicate act for the RICO Conspiracy Charge in this case.

4. The CCE Charge

Banks makes four arguments, two in his opening brief and two in his Reply, as to why the CCE Charge violates the plea agreement. First, Banks argues the CCE charge constitutes a "reprosecut[ion]" of Banks for the same conduct in the Prior Case. (Mem. at 7.) Banks claims the narcotics conspiracy to which he pled guilty is merely a lesser included offense for the CCE charge, which "also raises serious Double Jeopardy concerns." (Id.) Second, Banks claims that the Plea Agreement allows for prosecution relating only to conduct post-dating the Plea Agreement. (See id. at 7.) Neither of these arguments is persuasive.

Banks also raises two additional arguments for the first time in his Reply, thereby forfeiting or waiving those arguments. See Donziger, 325 F. Supp. 3d at 379 n.21. Regardless, those arguments fail on the merits. Banks argues that the plain language of the carveout provision does not cover prosecution for a CCE charge because the provision lists only the RICO statute. (See Reply at 3-4.) Banks also claims the narcotics conspiracy charge to which he pled guilty is a "violation," not a predicate act, for the purpose of a CCE charge, so the Prior Conduct is not covered by the plain language of the carveout provision. (See Reply at 2-5.)

i. Re-Prosecution and Double Jeopardy

First, the Government's prosecution of Banks for CCE after his prior plea for narcotics conspiracy is not a re-prosecution; nor, at this stage, does it raise double jeopardy concerns. That follows because "Congress intended CCE to be a separate offense" from its predicates and "it does not violate the Double Jeopardy Clause under the facts of this case to prosecute the CCE offense after a prior conviction for one of the predicate offenses." Garrett v. United States, 471 U.S. 773, 793 (1985).

Banks's concerns are unsubstantiated here where Banks has neither fully explained nor briefed the merits of his double jeopardy claims, instead gesturing only at the possibility of doing so in the future. (See Mem. at 7 n.8.) Further, the Government explains that the current CCE Charge encompasses four years of criminal conduct rather than the fourteen-month-long conspiracy at issue in the Prior Case, which constitutes a broader prosecution, rather than a mere "reprosecution," (Mem. at 7), as Banks claims. (See Opp. at 11 (noting Banks is "alleged to have begun participating in the conspiracy alleged in S9 Count One as of at least in or about 2016" through 2020).) The Court has no basis on this record to dismiss the CCE Charge based on claims of "reprosecution" or double jeopardy and declines to do so.

ii. Whether the CCE Charge Can Be Based on Conduct Predating the Plea Agreement

Banks next argues, in a single sentence, that to "avoid a claim of Double Jeopardy, evidence of the CCE offense must be limited to conduct occurring after the Plea Agreement." (Mem. at 7.) In support of that broad argument, he cites, with no explanation, United States v. Romero, 967 F.2d 63, 68 (2d Cir. 1992). The court there held that the prosecution of

the defendant for conduct post-dating his plea agreement did not violate the Double Jeopardy Clause because the specific language in that plea agreement allowed such a prosecution. See Romero, 967 F.2d at 67-68. But, as the Government correctly notes, (see Opp. at 6), nothing in Romero stands for the proposition that a prosecution based on conduct that *pre*-dates a plea is *per se* impermissible, in part because no such conduct was at issue in that case.

Further, nothing in the plain language of the Plea Agreement prevents the Government from using conduct pre-dating the plea as part of this case. (See Plea Agreement at 1-2.) And during his plea allocution, Banks acknowledged the Plea Agreement "constituted [his] complete and total understanding of the entire agreement between the [G]overnment, [his] attorneys, and [him]self" and that there were no "side deals," such as an agreement to not prosecute Banks for conduct pre-dating the plea. (Plea Transcript, United States v. Jamil Banks, No. 20-CR-284 (S.D.N.Y. Mar. 18, 2022), Dkt. No. 41, at 17:10-22.) Banks's argument that the Government breached the Plea Agreement by prosecuting him for pre-plea conduct fails.

iii. Arguments Raised in Reply

Banks next argues, for the first time on Reply, the plain language of the carve-out provision does not allow the Government to prosecute him on the CCE Charge, which utilizes the offense conduct from the Prior Case as a predicate. (See Reply at 3-4.) Banks argues that the carve-out's clause allows the Government to use only the Prior conduct in a subsequent RICO prosecution – not a prosecution for CCE. (See Reply at 3.)

Banks also argues, for the first time on Reply, that the Plea Agreement does not allow the Government to use the Prior Conduct to support a CCE charge because proof of a CCE offense requires a "continuing series of violations," rather than "predicate acts." (Reply at 4.) The Plea Agreement allows the Government to use only the conduct underlying his conviction as a "predicate act or as the basis for a sentencing enhancement in a subsequent prosecution," (Plea Agreement at 2), so, Banks argues, the plain language of the Plea Agreement forbids the Government from using the Prior Conduct to prove "violations" for the purposes of the CCE Charge. (See Reply at 4.)

Banks has forfeited or waived each of those arguments by raising them for the first time in his Reply, so the Court declines to consider those arguments. See Donziger, 325 F. Supp. 3d at 379 n.21.

5. The Firearms Charge

Banks next argues that the Firearms Charge should be dismissed for breach of the Plea Agreement because (i) the Firearms Charge is premised on the same conduct as his prior Section 924(c) charge; (ii) Banks pled guilty in return for a promise by the Government to dismiss the then-pending Section 924(c) charge against him; and (iii) the Government improperly uses the prior drug conspiracy charge as a predicate for the current Firearms Charge. (See Mem. at 7-8; Reply at 4-5.)

First, the Government did not breach the Plea Agreement by using the conduct underlying the prior Section 924(c) charge to bring the Firearms Charge in this case. The Plea Agreement does not contain any agreement by the Government to not prosecute Banks in the future for violation of Section 924(c), as it did for the narcotics conspiracy charge. (See Plea Agreement at 1-2.) Instead, all the Government promised was to dismiss the open charges in the Indictment, including

the Section 924(c) charge. (See id. at 2.) The Government fulfilled that promise. (See Sentencing Transcript, United States v. Jamil Banks, No. 20-CR-284 (S.D.N.Y. Aug. 2, 2022), Dkt. No. 55 at 15:4-19:1.)

Second, Banks argues that it was "fundamentally unfair" "gamesmanship" for the Government to "induce a guilty plea through promising to dismiss" the prior Firearms Charge, "only to resurrect the same crime years later under a different statute." (Mem. at 8.) According to Banks, that conduct violates "the language and spirit of the Plea Agreement." (Id.) The Court first notes that there was no "language" in the plea agreement by the Government undertaking not to prosecute Banks in the future for the conduct underlying the firearms offense, as there was (with a carveout) for the narcotics conspiracy. (See Plea Agreement.)

Further, Banks cites no authority supporting any of the propositions above. However, the authority the Court has been able to find demonstrates that Banks's argument lacks merit. In United States v. Levasseur, the defendants had been subjected to a prosecution in which the Government dismissed some open counts. 846 F.2d 786, 790-91 (1st Cir. 1988). The

Government later used the conduct underlying those open counts as RICO predicates in a subsequent prosecution. Id. at 791-92. The First Circuit deemed the prosecution proper, holding that "the government's waiver of prosecution on the open counts [was] not inconsistent with its institution of RICO charges based on the same factual predicate," because there was nothing in the Government's prior representations "to indicate that the United States traded away this right." Id. at 793-94.

Here, the Government similarly did not act improperly by bringing the Firearms Charge after having dismissed the prior Section 924(c) charge. There is no indication the Government "traded away [the] right" to prosecute Banks for firearms offenses in the future by dismissing the then-open count. Id. at 793. Absent any express language in the Plea Agreement or evidence suggesting the Government made such a promise, the Court holds the Government did not breach the Plea Agreement.

Banks finally argues, for the first time on Reply, that the Government has breached the Plea Agreement by using Prior Conduct as a predicate for the Firearms Charge. (See Reply at 4-5.) Once again, Banks has forfeited or waived this argument

by raising it for the first time on Reply, and the Court will not consider it. See Donziger, 325 F. Supp. 3d at 379 n.21.

B. Motion for Inspection of Grand Jury Minutes

The Court also denies Banks's request for an *in camera* inspection of the grand jury minutes. (See Mem. at 8-9.) It is well-settled that a defendant seeking disclosure of grand jury minutes has the burden of showing a "particularized need" that outweighs the default "need for secrecy" in grand jury deliberations. United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978).

Banks claims this Court must inspect the grand jury minutes because the Government's use of his Prior Conduct in this case constitutes a breach of the Plea Agreement. (See Mem. at 8-9.) As discussed above, the Court rules there was no breach of the Plea Agreement, so Banks has also failed to show a "particularized need" that would justify an *in camera* inspection of the grand jury minutes on that basis. Moten, 582 F.2d at 662.

C. Motion for Bill of Particulars

Banks next requests the Court order the Government to provide a bill of particulars so he can interpose a plea of double jeopardy. (See Mem. at 9-10; Ltr. at 2-4.)

1. Law Governing Bills of Particulars

The purpose of a bill of particulars is to provide the defendant with information sufficient to "identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); Fed. R. Crim. P. 7(f). "A bill of particulars is not meant to be a tool to compel disclosure of the Government's case before trial." United States v. Fruchter, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks and citation omitted).

In evaluating whether a defendant has been adequately informed "of the specific acts of which he is accused," id., courts look to the indictment, the materials disclosed in discovery, and – if applicable – any bills of particulars already filed. See, e.g., Bortnovsky, 820 F.2d at 574 ("[I]f

the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required.”). “The ultimate test is whether the information sought is necessary, not whether it is helpful.” United States v. Morgan, 690 F. Supp. 2d 274, 285 (S.D.N.Y. 2010). It is within the Court’s discretion to make that determination and order a bill of particulars if appropriate. See Bortnovsky, 820 F.2d at 574.

2. Discussion

Banks principally argues that he needs a bill of particulars to interpose a plea of double jeopardy. (See Mem. at 9-10; Ltr. at 2-4.) The Government responds by arguing that Banks does not possess a viable double jeopardy claim, so no bill of particulars is necessary. (See Opp. at 11-13; Ltr. at 1-2.)

The Court holds that Banks is not entitled to an additional bill of particulars for several reasons. First, the Government has already provided a Bill of Particulars – both to Banks’s predecessor counsel and current counsel. (See Ltr. at 1; Bill of Particulars.) Banks claims the Bill of Particulars is insufficiently detailed to support a plea of double jeopardy, (see Ltr. at 2-4), but he has not

demonstrated that the information he seeks is "necessary," rather than merely "helpful." Morgan, 690 F. Supp. 2d at 285.

Second, the Court has previously denied a similar motion from Banks's co-defendant Edwin Carrasquillo, who requested a supplemental bill of particulars after the Government sent the Bill of Particulars. (See Dkt. No. 490.) There, the Court held that "[t]he charges set forth in the Indictment are not 'so general that they do not advise [Carrasquillo] of the specific acts of which he is accused.'" (Id. (quoting United States v. Skelos, No. 15-CR-317, 2015 WL 6159326, at *12 (S.D.N.Y. Oct. 20, 2015)). As with Carrasquillo, the Court finds that Banks "has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." United States v. Payden, 613 F. Supp. 800, 816 (S.D.N.Y. 1985).

In addition, the Government's Opposition provides much of what is "necessary" for Banks to interpose a plea of double jeopardy, rendering the information he requests in an additional bill of particulars merely "helpful." Morgan, 690 F. Supp. 2d at 285. The Government admits – several times over – that it used the conduct from the Prior Case in several respects here, including as predicates for each count against

Banks. (See Opp. at 5-7 (Government describing its use of what it terms the "immunized conduct").) The Government has described how it has used the prior conviction in this case, which provides an adequate basis for Banks to "interpose a plea of double jeopardy," Bortnovsky, 820 F.2d at 574, vitiating any need for an additional bill of particulars.

The Government has also supplied voluminous discovery in this case, which has provided Banks with details about the charges against him that also militates against ordering an additional bill of particulars. See id. ("[I]f the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required.")

The Court finds that Banks has all the information he needs to interpose a plea of double jeopardy, including a bill of particulars that has already been provided by the Government, and that no further bill of particulars is required.[6] The Court therefore denies Banks's Motion for a Bill of Particulars.

---

[6] As discussed above, Banks has not squarely presented a motion or substantive arguments about how double jeopardy requires dismissal of the charges against him, so the Court declines at this juncture to address the Government's argument that Banks's double jeopardy claims lack merit.

D. Motion to Dismiss the CCE Charge for Failure to State an Offense

Finally, Banks argues that this Court must dismiss the CCE Charge. (See Mem. at 11-12; Reply at 7-9.) Banks contends that an indictment charging a violation of the CCE statute, 21 U.S.C. § 848, must specify the foundational predicate offenses, as such predicates are elements of the offense. (See Mem. at 11-12; Reply at 7-9.) Banks argues the CCE Charge in the Indictment fails to specify the requisite number of predicates so it must be dismissed. (See Mem. at 11-12; Reply at 7-9.)

As the Court explains below, numerous courts have "strongly disapproved" of indictments charging CCE offenses in the form the Government did here. United States v. Montague, 67 F.4th 520, 549 (2d Cir. 2023) (Jacobs, J., dissenting) (collecting cases), cert. granted, judgment vacated, 144 S. Ct. 2654 (2024). Nonetheless, the Court is compelled by binding precedent to hold that the CCE Charge withstands "dismissal only because [the Indictment] allege[s] qualifying predicate offenses in other counts." Id.; see, e.g., United States v. Flaharty, 295 F.3d 182, 197-98 (2d Cir. 2002); United States v. Joyner, 313 F.3d 40, 47-48 (2d Cir. 2002); Santana-Madera v. United States, 260 F.3d 133,

140 n.3 (2d Cir. 2001). The Court will, therefore, deny Banks's Motion to Dismiss the CCE Charge.

1. Law Governing a Motion to Dismiss a Charge in an Indictment

Rule 7(c) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). A defendant may move to dismiss an indictment (or specific charges in an indictment) for, among other things, "lack of specificity" or "failure to state an offense[.]" Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).

On a motion to dismiss an indictment for lack of specificity or failure to state an offense, the Court does not consider the sufficiency of the evidence but rather focuses on the legal sufficiency of the indictment itself. See United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998). "A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." United States v. Smith, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014) (internal quotation marks omitted). "A charge

in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." Id.

On the other hand, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see also United States v. D'Amelio, 683 F.3d 412, 418 (2d Cir. 2012) (holding that the "core of criminality" of an offense about which a defendant must be on notice "involves the essence of a crime, in general terms[,] [and] the particulars of how a defendant effected the crime fall[] outside that purview"). Thus, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Alfonso, 143 F.3d at 776 (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992)).

2. Banks's Motion

Banks argues that the CCE Charge is "defective because it fails to allege the specific predicate violations

constituting the 'continuing series of violations' required under 21 U.S.C. § 848(c)(2)." (Mem. at 11.) Banks argues that (1) the continuing series of violations "requires at least three predicate violations;" (2) each predicate is an element of the offense; (3) "an indictment must set forth each element of the crime it charges;" and (4) the CCE Charge is deficient because the indictment fails to set forth three predicates. (Id. at 11-12.)

In support, Banks points to the proceedings in United States v. Montague, 67 F.4th 520 (2023). (See Mem. at 11-12; Reply at 7-9.) There, the defendant was convicted of, among other things, CCE, and challenged the sufficiency of the indictment on appeal, arguing the indictment had failed to allege three predicates necessary to constitute the "continuing series of violations" element of a CCE offense. See United States v. Montague, 67 F.4th 520 (2023). The Second Circuit denied the defendant's argument and affirmed his conviction. See Montague, 67 F.4th at 528-32. The defendant petitioned the Supreme Court of the United States for a writ of certiorari. Before the Supreme Court, the Solicitor General confessed error, recognizing that the indictment failed to allege three predicates. See Brief of United States

at 10-12, Montague v. United States, No. 23-959 (U.S. May 17, 2024) ("Montague SG Br."). The Supreme Court granted Montague's petition, vacated his conviction, and remanded the case to the Second Circuit in light of the Solicitor General's confession of error. See Montague v. United States, 144 S. Ct. 2645 (2024). On remand, the Second Circuit vacated Banks's CCE conviction because "the indictment did not give Montague notice of specific predicate acts to be proven, which limited his ability to mount an effective defense." United States v. Montague ("Montague II"), No. 18-2975, 2024 WL 4100517, at *2 (2d Cir. Sept. 6, 2024).

Banks argues that the CCE Charge in the Indictment is "deficient for the same reasons" that the Solicitor General identified in confessing error in Montague, so this Court should dismiss the CCE Charge. (Mem. at 12.) The Government advances two main arguments in response. First, it claims the CCE Charge is facially sufficient because it alleges a "continuous series of regular and typically daily violations" of federal narcotics law over more than thirty years. (Opp. at 10.) Second, the Government urges the Court to look to the whole of the Indictment. (Id. at 8-10.) According to the Government, the Indictment contains at least three predicate

offenses, so the Indictment properly alleges a violation of the CCE statute. (Id.)

3. Requirements for Pleading a "Continuing Series of Violations" in an Indictment

The Court recognizes that the proceedings in Montague reflect a considerable debate about how, exactly, an indictment must plead the elements of a CCE charge. See Montague SG Br. at 10-12; Montague, 67 F.4th at 545-50 (Jacobs, J., dissenting).

Regardless, binding Supreme Court and Second Circuit precedent and similar cases from other Courts of Appeal provide guidelines dictating how this Court should analyze the sufficiency of an indictment alleging a CCE violation.

First, a CCE charge has five elements:

> To convict a defendant of engaging in a CCE, the government must prove (1) that he committed a Title 21 drug felony violation, (2) that is part of a continuing series of Title 21 drug violations, (3) which are undertaken by such person in concert with five or more other persons, (4) with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and (5) from which such person obtains substantial income or resources.

United States v. Aiello, 864 F.2d 257, 263-64 (2d Cir. 1988).

Next, the Second Circuit has "interpreted 'a continuing series,'" of violations, the second element, "to mean at least

three felony drug violations" "of any of the provisions in the subchapters comprising" 21 U.S.C. §§ 801-971 "over a definite period of time." Flaharty, 295 F.3d at 197.

Crucially, the Supreme Court has held that each of the predicate felony drug violations itself constitutes a "separate element[s]" of a CCE offense. Richardson v. United States, 826 U.S. 813, 819 (1999). Accordingly, the Second Circuit has recognized that "the violations composing a continuing series are elements of the CCE offense and must appear in the indictment." Montague, 67 F.4th at 529, vacated on other grounds, 144 S. Ct. 2645 (2024); see also Joyner, 313 F.3d at 48 (recognizing indictment charging CCE was deficient under Richardson because "there was nothing in the indictment identifying which three violations served as the predicate for the CCE charge"); Montague SG Br. at 11 ("[A]n indictment charging a CCE offense cannot merely mirror Section 848's reference to a 'series of violations' but must go beyond the statutory text to identify the predicate drug-law violations alleged to be part of that series.").

Further, the defendant must himself "commit[] each of the individual 'violations' necessary to make up that 'continuing series.'" Richardson, 526 U.S. at 815; see also

Flaharty, 295 F.2d at 197 (defendant must have "committed three underlying crimes" constituting a series); Joyner, 313 F.2d at 47 (same).

The Second Circuit has "held that an indictment that does not identify which of many alleged felonies" "constituted the series is not thereby defective." Flaharty, 295 F.3d at 197. In other words, the CCE charge itself need not identify which three predicates constitute the series as long as the indictment as a whole contains three predicates.

Finally, the Court notes that the Second Circuit and other Circuits have not identified a single method by which the Government must plead the three predicates in an indictment. See, e.g., Santana-Madera, 260 F.3d at 140 n.3 (holding that by "alleging that [the defendant] supervised five or more people in the commission of three or more of the nine violations of the drug laws listed in the indictment, the indictment thus alleged the elements of the CCE offense" (cleaned up)); Flaharty, 295 F.3d at 198 (holding indictment sufficiently charged a CCE offense because it "closely tracked the language of § 848(c), and it alleged that the continuing series of felonies were violations of" § 841(a)(1) and two § 846 charges alleging conspiracies to violate §§ 841

and 860); accord. United States v. Bansal, 663 F.3d 634, 647 (3d Cir. 2011) (holding "an indictment" charging a CCE offense "must include the facts and circumstances comprising at least three" violations).

Judge Jacobs, dissenting in Montague, identified three methods in which an indictment can sufficiently plead the three predicates necessary for a CCE violation: (1) "a list of allegations within the CCE count;" (2) "separate counts charging qualifying drug offenses;" or (3) "a description of sufficient facts in an introductory section." Montague, 67 F.4th at 547 n.3 (Jacobs, J., dissenting).

4. Discussion

The question before the Court is whether the Indictment has sufficiently pled the three predicate felony violations that serve as elements of the CCE Charge. While this question presents a close call, the Court holds the Indictment sufficiently pleads three predicate acts and therefore denies Banks's Motion to Dismiss.

i. Allegations Within the CCE Count

At least five Courts of Appeal have "strongly disapproved" of indictments that do not charge three predicates in the CCE count itself. Montague, 67 F.4th at 549

& nn.6-7 (Jacobs, J., dissenting) (collecting cases). The Court, therefore, begins with a review of the language of the CCE Charge in the Indictment itself to determine whether that count alone sufficiently pleads the three necessary predicates.

Count Eleven of the Indictment, which charges Banks and several of his co-defendants with engaging in a CCE, alleges, in pertinent part:

> From at least in or about 1993 through at least in or about February 2025, in the Southern District of New York and elsewhere . . . [E]ach of the defendants knowingly and intentionally participated in *a continuing series of violations of Title 21, United States Code, Chapter 13, Subchapter I, to wit, a continuing series of regular and typically daily violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)* . . .

(Indictment at 20-21 (emphasis added).)

On its face, Count Eleven lists only one predicate offense: 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Id.) See United States v. Outen, 286 F.3d 622, 635-36 (2d Cir. 2002) (explaining that Section 848(a) provides the "unlawful acts" and Section 848(b) provides penalties that vary based on types and quantities of drugs, so an indictment charging a violation of Section 841(a) "and included no allegation of drug quantity" constitutes a single offense.)

The Government urges – without citation to caselaw - that the Indictment's allegation that those violations occurred "regular[ly] and typically daily" is, "on its own, . . . sufficient to" plead the three necessary predicates. (Opp. at 10.) Banks replies that "generic" phrasing is insufficient because "the CCE count itself contains no list of specific violations attributable to Mr. Banks." (Reply at 9.)

Montague II is instructive. There, the Court held "the indictment did not give Montague notice of specific predicate acts to be proven, which limited his ability to mount an effective defense." Montague II, 2024 WL 4100517, at *2.

The indictment in Montague read, in pertinent part:

> From in or about 2008, . . . through and including on or about July 1, 2014, in the Western District of New York, and elsewhere, the defendant, COLIN MONTAGUE . . . did knowingly, willfully, intentionally and unlawfully engage in a Continuing Criminal Enterprise in that *he did violate Title 21, United States Code, Sections 841(a)(1) and 846, which violations were part of a continuing series of violations of said statutes* undertaken by the defendant, COLIN MONTAGUE . . .

(Indictment at 2, United States v. Montague, No. 14-CR-6136, Dkt. No. 55 (W.D.N.Y. Dec. 9, 2014) (emphasis added).)

The indictment in Montague listed two predicate offenses, Sections 841(a)(1) and 846, whereas the CCE Charge in this Indictment lists only one.

The main difference between the CCE charge in Montague and the CCE Charge in the Indictment in this case is that the Government has added here that the violations comprising the series occurred "regular[ly] and typically daily[.]" (Compare id., with Indictment at 21.) The Court holds that, given the briefing in this case, the addition of that phrase is insufficient to adequately plead the additional predicates necessary to support a CCE offense.

The Government has neither provided caselaw nor any meaningful argument as to why the Indictment's allegation that Banks committed the two predicates in the CCE Charge "regular[ly] and typically daily" suffices "to support a continuing series of violations." (Opp. at 10.) "Such legal conclusions, 'with no citations to the record or any legal authority for support [do] not constitute adequate briefing.'" Lacura, Inc. v. Masas U.S.A., Inc., No. 15-CV-3101, 2016 WL 11481722, at *7 (E.D.N.Y. Feb. 9, 2016), report and recommendation adopted, No. 15-CV-3101, 2016 WL 843291 (E.D.N.Y. Mar. 1, 2016) (quoting In re Julian, No. 11-30151,

2012 WL 506573, at *4 (Bankr. D. Conn. Feb. 15, 2012)). "[T]he Court has no obligation to consider an argument for which a party has cited no legal authority." Glidepath Holding v. Spherion Corp., 590 F. Supp. 2d 435, 459 n.9 (S.D.N.Y. 2007).

Perhaps there is a legal basis for the Court to conclude that the inclusion of the phrase "regular[ly] and typically daily" is enough to turn an indictment that the Second Circuit deemed insufficient into an indictment that properly pleads at least three predicates. But absent any argument or legal authority, the Government's briefing is inadequate for the Court to find that the phrase "regular[ly] and typically daily" is sufficient to plead at least three predicates. See, e.g., Lacura, Inc., 2016 WL 11481722, at *7.

ii. Separate Counts Charging Qualifying Drug Offenses

Having determined the CCE Charge fails to sufficiently plead three predicates, the Court next determines whether the remaining two predicates appear in other counts in the Indictment. See, e.g., Santana-Madera, 260 F.3d at 140 n.3; Flaharty, 295 F.3d at 198; Montague, 67 F.4th at 549 & n.6 (Jacobs, J., dissenting).

Banks argues that he is not charged with other offenses in the Indictment that could serve as predicates supporting the CCE Charge. (See Reply at 8.) The only other charges pending against Banks are RICO Conspiracy, in violation of 18 U.S.C. § 1962(d), and Use of Firearm for a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. (See Indictment at 26-27.) The CCE statute makes clear that the predicates constituting a continuing series of violations must be felony violations of Title 21, Chapter 13, Subchapters I or II. See 21 U.S.C. § 848(c)(1)-(2). The RICO Conspiracy and Firearms Charges do not fall within those Subchapters and cannot themselves serve as predicates for the CCE Charge. The Court agrees with Banks that those two charges themselves cannot serve as CCE predicates.

However, the Government argues that allegations contained in the section of the Indictment alleging RICO Conspiracy provide the third predicate. (See Opp. at 11) Paragraphs 7 and 8 allege that Banks was engaged in a narcotics conspiracy in violation of 21 U.S.C. § 846 ("Section 846"). (See Opp. at 11.) That, the Government says, (see id.), amounts to a "separate count[] charging qualifying drug

offense[],” sufficient to provide the third predicate. Montague, 67 F.4th at 547 n.3 (Jacobs, J., dissenting).

That section of the Indictment alleges that Banks and others conspired to and did distribute and possess with intent to distribute cocaine, heroin, crack, and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (“Section 846). (See Indictment ¶¶ 7-8.) The Court holds that the allegation of narcotics conspiracy in violation of Section 846 and the allegations involving distribution of different drugs with specified quantities provide the necessary additional predicates for the CCE Charge in Count Eleven.

A Section 846 charge is a permissible predicate for a CCE charge. See United States v. Young, 745 F.3d 733, 750-751 (2d Cir. 1984). Paragraphs 7 and 8 charge a Section 846 conspiracy and provide details regarding the specific drugs and weights involved in the conspiracy, the third predicate necessary to plead a continuing series of violations. (See Indictment ¶¶ 7-8.)

Indeed, Banks argues, in claiming breach of the Plea Agreement, that the Government uses the narcotics conspiracy from the Prior Case under Section 846 to establish the

continuing series of violations in the CCE Charge. (See Mem. at 7; Reply at 2-4.) Banks admits he is on notice that the Government intends to use narcotics conspiracy in violation of Section 846 as the third predicate. (See Mem. at 7 (arguing Government breached Plea Agreement by relying on narcotics conspiracy to establish CCE Charge).) Together, paragraphs 7 and 8 of the Indictment and Banks's acknowledgement that the Government is using the narcotics conspiracy as a predicate for the CCE Charge provide Banks with a "description of sufficient facts" necessary to inform him of the second predicate supporting the CCE Charge. Montague, 67 F.4th at 547 n.3 (Jacobs, J., dissenting). Dismissal of the CCE Charge is, therefore, denied.

The allegations that Banks distributed specific quantities of cocaine, heroin, crack, and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), constitute additional predicates that support the CCE Charge. Where an indictment pleads a specific drug quantity that "'may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs,'" the "drug quantity becomes an 'element of the offense[.]'" Outen, 286 F.3d at 635-36 (quoting United States v. Thomas, 274 F.3d 655, 660 & n.3 (2d

Cir. 2001)). And where an indictment names a specific type of substance and specific quantities, "both drug type and drug quantity . . . are elements of the various separate and distinct offenses created by that statute." United States v. Arias, 409 F. Supp. 2d 281, 294 (S.D.N.Y. 2005).

The Indictment alleges that Banks distributed specific quantities of four different types of drugs. (See Indictment at 9.) Each of those types of drugs and specific quantities is, therefore, a separate element of a separate Section 841 offense. See, e.g., Arias, 409 F. Supp. 2d at 294; Outen, 686 F.3d at 635-36; Thomas, 274 F.3d at 663. In other words, paragraph 8 of the Indictment alleges multiple offenses under Section 841, separate offenses for each separate type and quantity of drug. Those allegations provide the additional predicates necessary to prove a CCE violation.

Banks separately argues that the allegations in the Indictment charging RICO Conspiracy cannot serve as a predicate for the CCE Charge because those allegations amount to "an enterprise-wide description of collective conduct," which does not inform Banks "'which three crimes [he] committed.'" (Reply at 9 (quoting Richardson, 526 U.S. at 818-19).) But paragraph 8 specifically sets forth what Banks

is alleged to have done. Paragraph 8 states, in pertinent part, that "[i]t was an object of the conspiracy that . . . JAMIL BANKS" and his co-defendants "would *and did* distribute and possess with intent to distribute" specific drugs in specific amounts. (Indictment ¶8 (emphasis added).)

The allegations regarding the narcotics conspiracy and drug distribution charges do not simply provide that the Valentine Avenue Crew as a whole engaged in a narcotics conspiracy that involved drug distribution; instead, paragraph 8 explicitly alleges that Banks himself was involved in the conspiracy, including by dealing the specific types and quantities of drugs mentioned in that paragraph. See, e.g., Flaharty, 295 F.2d at 197 (defendant must have "committed three underlying crimes" constituting a series); Richardson, 526 U.S. at 815 (same); Joyner, 313 F.2d at 47 (same). The Indictment, therefore, "fairly informs [Banks] of the charge against which he must defend," by detailing which three crimes the Government alleges he committed such that he engaged in a "continuing series of violations" necessary to plead a CCE offense. Hamling v. United States, 418 U.S. at 117.

* * *

Numerous courts have "strongly disapproved" of indictments, like the Indictment here, that do not charge three predicates in the CCE count itself. See Montague, 67 F.4th at 549 & nn.6-7 (Jacobs, J., dissenting) (collecting cases). Nonetheless, under prevailing precedent, the Court holds that the Indictment sufficiently pleads a continuing series of violations necessary to plead a CCE offense because it pleads a third predicate in Count One. See, e.g., Flaharty, 295 F.3d at 198; Santana-Madera, 260 F.3d at 140 n.3; Joyner, 313 F.2d at 47. The Court therefore denies Banks's Motion to Dismiss the CCE Charge.

## III. ORDER

For the reasons stated above it is hereby

**ORDERED** that the Omnibus Pretrial Motions (Dkt. No. 597) of Defendant Jamil Banks ("Banks") to (i) dismiss the Indictment for breach of the Plea Agreement, (2) order a bill of particulars, (iii) inspect the grand jury minutes, and (iv) dismiss Count Eleven of the Indictment are **DENIED.**

**SO ORDERED.**

Dated: 2 November 2026
New York, New York

_________________________
Victor Marrero
U.S.D.J.